IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MICHAEL CARADINE**                                                        **PLAINTIFF**

**V.**                                                           **NO. 1:08CV305-DAS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                        **DEFENDANT**

**MEMORANDUM OPINION**

The claimant, Michael Caradine, seeks judicial review pursuant to 42 U.S.C. § 405(g) of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding his claim for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The court having duly considered the briefs of the parties, the record, and the applicable law, finds as follows, to wit:

**I. PROCEDURAL AND FACTUAL HISTORY**

On January 18, 2006, the claimant protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of July 15, 1996. However, the Social Security Administration ("SSA") determined that the claimant's work through December 2005 constituted substantial gainful activity and recommended that his onset date be amended to January 1, 2006, with regard to the disability application. The claims were denied both initially and upon reconsideration, and the claimant requested and was granted a hearing before an administrative law judge ("ALJ"). The ALJ issued an unfavorable decision on August 21, 2008. The ALJ's hearing decision became perfected as

the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on November 24, 2008.

The claimant was born on November 15, 1966 and is currently 42 years old. He completed high school but was in all special education classes. The claimant has past relevant work as a janitor and forklift operator/laborer. Administration of the Weschler Adult Intelligence Scale-III (WAIS-III) performed by the consulting psychologist, Dr. Philip Drumheller, on November 19, 2007, revealed a verbal IQ of 64, a performance IQ of 79, and a full scale IQ of 68. Dr. Drumheller stated that the test results were "reliable and valid," and showed Mr. Caradine was "functionally within the mild range of mental retardation." In addition, results from the Wide Range Achievement Test-III (WRAT-III) established that the claimant read at the 3rd grade level, spelled at the 2nd grade level, and performed arithmetic at the 2nd grade level.

The ALJ determined that the claimant suffered with severe impairments, including a seizure disorder, borderline intellectual functioning, gouty arthritis, hypertension, and organic brain syndrome. The ALJ found the claimant did not have an impairment or combination of impairments that met or medically equaled a listed impairment, however. Ultimately, the ALJ determined that the claimant had the residual functional capacity ("RFC") "to perform sedentary work involving simple instructions and changes gradually introduced." The ALJ further determined that the claimant could concentrate for at least two hours at a time without a break. And, after considering the testimony of a vocational expert ("VE"), the ALJ determined that the claimant could not perform his past work but could perform other jobs that existed in significant numbers in the national economy.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the claimant must prove she is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove her impairment is "severe" in that it "significantly limits h[er] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (2009).[5] Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education and past work experience, that she is capable of performing other work.[7] If the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2009).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b) (2009).

[4] 20 C.F.R. §§ 404.1520(c) (2009).

[5] 20 C.F.R. §§ 404.1520(d) (2009). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2009).

[6] 20 C.F.R. §§ 404.1520(e) (2009).

[7] 20 C.F.R. §§ 404.1520(f)(1) (2009).

Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2009); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th

---

[8]*Muse*, 925 F.2d at 789.

Cir. 1994).

### III. ANALYSIS

The claimant presents two issues for this appeal:

1) The ALJ, and subsequently the Appeals Council, erred in failing to find the claimant disabled pursuant to Listing 12.05(C).

2) Alternatively, the ALJ erred in assessing the claimant's RFC which resulted in improper reliance upon the testimony of the vocational expert.

The court will consider each contention separately.[9]

### 1. Listing 12.05(C)

The claimant argues the ALJ erred in failing to find he was disabled pursuant to Listing 12.05(C). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The criteria in the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

Listing 12.05, Mental Retardation, states:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2006). This is what is commonly referred to as the

---

[9]The claimant also contends the ALJ erred at step 2 by failing to find that his morbid obesity was a severe impairment and by finding that he suffered from "severe borderline intellectual functioning" instead of "mild mental retardation." Because the claimant has failed to show that he was prejudiced by these alleged failures, especially in light of the ALJ's ultimate finding that the claimant was capable of performing only sedentary work with simple instructions and gradual changes, this argument has no merit. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

"capsule definition" for this listing. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). In addition to meeting this capsule definition, a claimant must also meet one of the four severity prongs for mental retardation as listed in the regulations. *Id.* The Listing states that "[t]he required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." *See* 20 C.F.R., pt. 404, subpt. P, App. 1, § 12.05 (2009). For our purposes here, we need only examine prong C which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

On November 19, 2007, the claimant went to Dr. Drumheller for a psychological evaluation. The claimant underwent the Wechsler Adult Intelligence Scale which yielded a verbal IQ of 64, a performance IQ of 79, and a full scale IQ of 68. The ALJ found that the claimant's condition did not meet Listing 12.05(C) because he did not have a valid IQ score. The ALJ did not state any specific reasons for making this finding. The claimant contends that because Dr. Drumheller's assessment is the only medical evidence in the record of the claimant's IQ, and there is no contradictory medical evidence, it was error for the ALJ to reject or ignore this evidence. While the ALJ should have followed his finding with specific reasons, any error was harmless because substantial evidence in the record supports the ALJ's conclusion. *See Hammond v. Barnhart*, 124 Fed.Appx. 847, 852 n.10 (5th Cir. 2005) (noting that "[p]rocedural errors constitute bases for remand only where they cast into doubt the existence of substantial evidence to support the ALJ's decision") (citation omitted).

An ALJ may make factual determinations on the validity of IQ tests. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989). In this case, the ALJ found that the record revealed the

6

claimant could attend to his personal needs; he shopped, attended the movies, and attended church; his thought processes were connected and his psychomotor activity was within normal limits; he learned to drive a forklift and *successfully performed the job for six years*; and he drove five to six times per month.[10] These findings are supported by evidence in the record and adequately support the ALJ's conclusion that the claimant did not have a valid IQ score. *See Muse v. Sullivan*, 925 F.2d 785, 789-790 (5th Cir. 1991) (finding substantial evidence supported ALJ's determination that IQ scores were invalid where plaintiff's education, past work experience as a truck driver, and demeanor at the hearing called his IQ into question).

Assuming arguendo the ALJ erred in determining that the claimant's IQ scores were invalid, the court agrees with the defendant that the claimant still failed to meet Listing 12.05(C) because he failed to meet the criteria contained in the capsule definition of that Listing. To qualify for a disability finding under Listing 12.05(C), a claimant must meet both the diagnostic requirements contained in the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22) and the severity criteria contained in paragraph C (an IQ of 60 to 70 and a physical or other mental impairment). *See Randall v. Astrue*, 570 F.3d 651, 655-60 (5th Cir. 2009).

In his reply brief, the claimant suggests he met the capsule definition by pointing to his elementary and secondary school records as proof that he suffered from mental retardation prior to the age of 22. These records essentially indicate that the claimant failed and repeated the first grade, was in special education classes in high school, and graduated with a special education

---

[10]It is also worth noting that during the hearing, the claimant testified that he understood the need to take his medications and indicated with precision the different dosages and how often he was required to take each one. Tr. 30-32.

certificate instead of a diploma. However, in order to meet the introductory paragraph's diagnostic criteria, the claimant must show: 1) significantly subaverage general intellectual functioning; 2) deficits in adaptive behavior; and 3) have manifested deficits in adaptive behavior before age 22. *See Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) (cited with approval in *Randall*, 570 F.3d at 661).

In his findings, though Dr. Drumheller noted the claimant could not make change or handle money adequately, it was indicated that he could bathe and dress himself without assistance; did a fairly good job of remembering to take his medications; took the trash out and helped with household chores; used the telephone; could drive and had a driver's license; and was "reasonable" [sic] to schedule and keep appointments on his own. Dr. Drumheller further concluded:

> [T]hese results suggest the claimant is functionally within the [upper end of the] mild range of mental retardation. . . . The claimant is believed to be mildly impaired in his ability to perform routine, repetitive tasks. The claimant is believed to be mildly impaired in his ability to interact with co-workers. The claimant is believed to be mildly impaired in his ability to receive supervision. The claimant's concentration and attention is believed to be poor.

The claimant has failed to point to evidence that he had significantly subaverage general intellectual functioning with deficits in adaptive functioning. First, according to Dr. Drumheller's report, the claimant was functionally within the "upper end of the mild range of mental retardation." Moreover, with the exception of deficits in concentration and attention, the claimant was only mildly impaired in his ability to participate in gainful employment. And, concerning Dr. Drumheller's finding of "poor" concentration and attention, the ALJ expressly rejected this finding because it was inconsistent with the medical evidence and the claimant's reports of his activities of daily living. Specifically, the ALJ noted the claimant had only mild

8

difficulties with concentration and attention because he "could drive and his thought processes were connected."

Second, pursuant to Listing 12.00(C)(1), "adaptive activities" include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Dr. Drumheller's report fails to note any real deficits in adaptive functioning. Furthermore, the claimant's own testimony belies any claim of deficits in adaptive functioning. The claimant gave precise and clear testimony regarding his medications and his medication regimen, confirmed that he had a valid driver's license, and testified that he routinely went to the store to get food for himself and his sister. Accordingly, the claimant cannot show he met the requirements of the introductory paragraph to Listing 12.05. *See generally Randall, supra*, (finding where claimant could, among other things, cook, clean, communicate, manage time, travel independently and was alert, responsive, and had good social skills, good attention and concentration, the ALJ was entitled to reply on medical evidence establishing that the claimant suffered only "mild/borderline" adaptive retardation and that her impairments "would not preclude gainful competitive employment"). Therefore, based on the foregoing, there is no need to disturb the ALJ's step three finding. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (holding the court will not reverse an ALJ decision for lack of substantial evidence where a claimant makes no showing he could and would have adduced evidence that might have altered the result).

## 2. RFC Finding

The claimant argues in the alternative that the ALJ's RFC finding was erroneous and,

9

consequently, caused the ALJ to improperly rely upon the vocational expert's testimony. At step four, the ALJ determined that the claimant had an RFC to:

> perform sedentary work involving simple instructions and changes gradually introduced. The claimant can concentrate for two hours at a time without a break. He can occasionally lift and carry ten pounds and sit six hours out of an eight hour workday. The claimant can stand and walk two hours out of an eight-hour workday.

Based upon this RFC and relying upon the testimony of the VE, the ALJ determined that the claimant could perform other jobs. The claimant contends his scores on the WRAT-III and Dr. Drumheller's finding of mental retardation demonstrate that he is functionally illiterate. Additionally, he contends the ALJ's rejection of Dr. Drumheller's finding of poor attention and concentration was erroneous because Dr. Drumheller's finding was the only opinion from an examining psychologist in the record. Ultimately, the claimant argues that because the VE did not consider the claimant's functional illiteracy and poor attention and concentration, the VE's testimony that the claimant could perform other jobs did not constitute substantial evidence on which the ALJ could rely at step five.

First, the court finds the claimant's contention of functional illiteracy is unsupported by the record. Pursuant to 20 C.F.R. § 404.1564 (b)(1) (2009), a claimant is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Additionally, "an illiterate person has had little or no formal schooling." In this case, the claimant has failed to point to any evidence in the record suggesting that he could not read or write. *See Albritton v. Sullivan*, 889 F.2d 640, 642-43 (5th Cir. 1989) (finding despite a fourth grade education, uncontradicted evidence in the record showed the claimant was functionally illiterate). Indeed, though the claimant was in special

education classes in high school, he completed high school and completed a vocational training program at a community college where he received a janitorial certificate. *See Perez v. Barnhart*, 415 F.3d 457, 463 (5th Cir. 2005) (finding the ALJ's determination that the claimant had a high school education was supported by substantial evidence where the claimant's own testimony and school records showed he received a high school diploma despite being enrolled in special education classes and the claimant failed to show how his alleged "less-than-high-school" education impacted his ability to perform the jobs suggested by the VE). Additionally, the claimant had a valid driver's license, drove whenever he needed to go to the store for food, and worked for six years as a fork lift operator. Furthermore, the claimant's contention of illiteracy contradicts his disability application forms wherein he indicated that he could read and understand English and could write more than his name in English.

Second, as noted above, the ALJ rejected Dr. Drumheller's finding of poor attention and concentration because this finding was "not consistent" with the medical evidence and the claimant's activities of daily living. The "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). In addition to the evidence pointed to above, it should be noted that Dr. Drumheller failed to site any objective findings in his report supporting a finding of poor concentration or attention. Indeed, regarding the claimant's behavior during testing, Dr. Drumheller noted several times that the claimant studied items before responding and used "thoughtful and intuitive responding" and that his "thought processes were connected and psychomotor activity was within normal limits."

Finally, the ALJ's hypothetical question propounded to the VE need only reasonably

incorporate all disabilities recognized by the ALJ. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Here, the ALJ's hypothetical question to the VE reasonably contained all of the claimant's limitations supported by the evidence. Indeed, the claimant's attorney had an opportunity to present a hypothetical to the VE containing those additional limitations alleged by the claimant here, but failed to do so. Ultimately, the claimant failed to show that he could not perform the jobs tendered by the VE and, therefore, failed to meet his burden at step 5.

## **Conclusion**

Based on the foregoing, it is the opinion of the court that the decision of the Commissioner be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

This, the 10th day of November, 2009.

/s/ David A. Sanders
U. S. Magistrate Judge